# FRANKFORT WHISKY PROCESS COMPANY
## v.
# MANHATTAN DISTILLING COMPANY.

*Contract under Seal—License to use Patented Process—Attempt to
Vary by Verbal Evidence—Written Evidence not under Seal.*

The terms of a contract executed under seal can not be modified by a
parol executory agreement. To agree that a payment stipulated in a
sealed contract was not to be made in a certain event is not to substitute
a new contract but to modify the existing contract.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Peoria County; the
Hon. T. M. SHAW, Judge, presiding.

Messrs. ESEK COWEN and L. S. HODGES, for appellant.

The contract upon which ·this action was brought being
executory and under seal, could not be changed or modified
by parol.

The rule at common law, and the present rule in
most, if not all, the States, is that "a sealed executory
agreement before breach can not be modified by a parol
executory agreement."

This rule is recognized and established in Illinois in
Loach v. Farnum, 90 Ill. 368; Hume Bros. v. Taylor &
Moss, 63 Ill. 43; Leiter v. Pike, 127 Ill. 287; Sauber v.
Collins, 40 Ill. App. 426.

And it has been held in New York that covenants in a
lease unbroken can not be discharged by verbal stipulation.
French v. New, 28 N. Y. 149; Delacroix v. Bulkley, 13
Wend. 71.

The law, as laid down in the case last cited, is that a
sealed executory contract can not be released or rescinded
by a parol executory contract, but that after breach of a
sealed contract a right of action may be waived or released

by a new parol contract, in relation to the same subject-matter, or by any valid parol executory contract.

The same principle was held in Suydam v. Jones, 10 Wend. 180. The rule in England is set forth in Kaye v. Waghorn, 1 Taunton, 429. As was said in Preston v. Christmas, 2 Wilson, 86: "The discharge must be by matter of as high a nature as that which creates the debt or duty."

The rule that after breach the cause of action may be discharged or released by a valid parol contract, is simply saying that satisfaction may be proved by parol, and, of course, it makes no difference whether this is satisfaction of a right of action, arising on a parol or sealed contract. Any existing cause of action may be satisfied by a parol agreement.

The rule above stated is universally applied where the action, as in this case, is founded on or grows out of the sealed contract itself. This is a very ancient rule. Blake's Case, 6 Coke, 43; Alden v. Blague, Croke James, 99; Barnard v. Darling, 11 Wend. 27.

The cases of Lattimore v. Harsen, 14 Johns. 330, and Dearborn v. Cross, 7 Cow. 48, have frequently been cited to show that, in the State of New York, there exists some change or modification of this rule; and they are quoted as holding that a specialty may be modified by a simple contract between the parties.

These cases, however, were examined by the Supreme Court in Allen v. Jaquish, 21 Wend. 628, where Judge Cowen said :

"If these cases are maintainable, and I think they are, it must be on some other ground, perhaps that of a contract for rescission, executed and fully carried into effect—not on the simple idea of modification by a parol contract executory."

" And they were so regarded in the subsequent cases of Suydam v. Jones, Barnard v. Darling and Delacroix v. Bulkley. In these we have Mr. Justice Sutherland, Mr. Justice Nelson and Chief Justice Savage successively dis-

avowing the doctrine that parties can modify their agreements, under seal, by any subsequent agreement without seal.

"And any one will feel clear, on an examination of the books, that these learned judges could have done nothing less, without a rash disregard of the highest and best evidence which we have of the law."

In Braddock v. Thompson, 8 East, 366, it is said: "All the court were satisfied that the defendant could not plead a collateral agreement by parol, to invalidate a claim arising upon deed.

"Most of the cases that go against this doctrine, go no further than to say that where the agreement, under seal, is departed from, in the terms or manner of its performance, and yet the performance is accepted as satisfactory, although an action of covenant will not lie, the acts of the parties shall be considered as evincing an executed agreement to rescind the contract."

The rule has been recently reiterated in New York, by the Court of Appeals. In Dodge v. Crandall, 30 N. Y. 306, the court said: "In regard to instruments under seal, it requires an agreement in writing of equal solemnity, to effect a change or modification in any material particular. This seems to be the rule before any breach of the specialty, and where the subsequent agreement is executory merely. But it is, I think, equally well settled, that after the breach of a sealed agreement, it may be modified in any respect, or wholly rescinded by an executed parol agreement, founded on a sufficient consideration."

Messrs. STEVENS & HORTON and GEORGE B. FOSTER, for appellee.

It was competent for appellant to release appellee from the contract declared upon and an agreement for a valid consideration to that effect is binding and valid though not under seal. Whatever may have been the common law rule requiring a release to be under seal, our Supreme Court has uniformly held that a release is good without a seal if based

upon a good consideration.   White v. Walker, 31 Ill. 432–
434; Benjamin v. McConnell, 4 Gilm. 536; I. C. R. R. Co. v.
Read, 37 Ill. 484, 511; Ryan v. Dunlap, 17 Ill. 40; Baily v.
Coles, 86 Ill. 333.

The agreement described in the pleas and proved in this
case did not attempt to modify or vary the terms of the
original contract, but for a valid consideration, appellant, by
the agreement therein described, dispensed with the per-
formance by appellee of the requirements of the original
contract.   The rule seems to be well established that the
terms and conditions of a written contract, and even a
covenant, may be dispensed with by a verbal agreement
founded upon a proper consideration.   Morrill v. Colehour,
82 Ill. 618, 626; Danforth v. McIntyre, 11 Ill. App. 417;
Cook v. Murphy, 70 Ill. 96; Canal Co. v. Rhea, 101 U. S.
522.

The pleas and the evidence under them show that appel-
lee had declared its intention to determine the contract, and
it was about to give the notice, when prevented from so
doing by the procurement and acts of appellant as shown
in the record.   The rule is that where the performance of
an act has been prevented or waived by the other party to
the contract, the liabilities of the parties are the same as
though the act had been performed, that is, the notice given,
in this case.   Morrill v. Colehour, 82 Ill. 618; Fleming v.
Gilbert, 3 Johns. 530; Lattimer v. Harsen, 14 John. 330;
C. B. & Q. R. R. v. Bartlett, 120 Ill. 603, 613; Clark v. Pope,
70 Ill. 128; Eyster v. Parrott, 83 Ill. 517.

The agreement pleaded and proved was made under cir-
cumstances which take the case out of the rule asserted by
appellant.   Appellee had avowed its intention to go no fur-
ther under the original contract, and it was then competent
for the parties to make a new agreement, as pleaded and
proved.   Lattimer v. Harsen, 14 Johns. 330; Cook v. Mur-
phy, 70 Ill. 96.

The original contract having been thereby in effect ended,
it was entirely competent for the parties to so deal with it
by parol, as to waive or release any damages arising there-

from.　Cap. City Mut. F. Ins. Co. v. Detwiler, 23 Ill. App. 656; Delecroix v. Bulkley, 13 Wend. 71.

It was competent for the parties by parol agreement to waive or discharge all damages which had accrued up to the time of the making of the agreement.　Cap. City Mut. F. Ins. Co. v. Detwiler, *supra.*

It was equally competent for the parties to make an agreement for the abandonment of future operations under the contract.　Kimmerle v. Hass, 53 Mich. 341; Hill v. Green, 4 Pick. 113; Stockley v. Goodwin, 78 Ill. 127; Jacquin v. Warren, 40 Ill. 459; Chouteau v. Jupiter Iron Works, 7 S. W. Rep. 467.

Mr. Justice Cartwright.　This suit was commenced by appellant, a corporation of New York, against appellee, a corporation of this State, upon a written contract executed by them October 20, 1884, with their respective corporate names thereto subscribed, and under their corporate seals, attested by their respective secretaries, whereby appellant licensed the use by appellee of a patented process of making whisky, owned by appellant.　In the contract appellee acknowledged the validity of the letters patent for the process, and agreed to pay for the license one and one-half cents per bushel for every bushel of grain used in its distillery, payable on or before the 10th of each month, according to its distiller's monthly account.　It was further agreed that appellee might terminate the contract on ten days' written notice thereof to appellant, and that if appellant should thereafter grant the right to use the process at less than one and one-half cents per bushel, then appellee should only pay such reduced price, that is, that appellee should have the use of the process as low as it should thereafter be furnished by contract to any other parties.　The foregoing are the provisions of the contract which are material to the controversy in this case.　The object of the suit was to recover payment for the use of the patented process.　At the trial it was conceded by appellee that, if anything was due under the contract, the amount so due was $35,196.47.　The

defense made was, that after the making of the contract, appellee prepared a notice to terminate it according to its terms, and informed appellant of its intention to cancel it; that appellant agreed that if appellee would not cancel the contract and would aid in making other contracts for the use of the process with other distillers belonging to the Vacuum Mashing Co., then, in case of failure to make other contracts, appellant would not collect from appellee for the use of the process unless it collected from the other members of the Vacuum Mashing Co.; that appellee refrained from giving the notice and did all in its power to aid in making other contracts and that appellant had not collected from other members of the Vacuum Mashing Co.; wherefore appellee should not be compelled to pay according to the terms of the contract. There was a verdict and judgment thereon for appellee.

The alleged subsequent arrangement upon which the defense was founded, consisted of verbal agreements claimed to have been made between Edward S. Easton, president of appellee, and Marshall J. Allen, president, and W. E. Bradley, vice-president, of appellant.

Passing for the time being the question of the force and effect of such an arrangement, if made, upon the sealed, executory contract, the evidence failed to establish the making of it. The evidence on that subject was that after making the contract and commencing to use the process in question, appellee made objections to being obliged to pay for using it, when other distillers belonging to the Vacuum Mashing Co., which was a combination owning patents for the use of what was called a cooker, were making use of the same, or a similar process of straining slop to that of appellant, and were paying nothing. On account of that dissatisfaction a notice was prepared, dated February 4, 1885, for the termination of the contract according to its terms, and this notice was offered in evidence by appellee. Sumner R. Clarke, secretary of appellee, testified that the notice was not served in consequence of statements made by E. H. Taylor, Jr., of Frankfort, Ky., to the witness; that he

told Taylor about the notice and said they could not afford to use the process and pay a royalty while others were not paying, and that Taylor said that if others did not pay they should not. These statements were admitted in evidence against the objection of appellant. Taylor had aided in negotiating the contract, but did not execute it. He was not an officer of appellant, and had no authority to change or abrogate it, nor was there any reason to suppose that he had any such authority.

Counsel for appellee say that it is not claimed that in the conversations with Taylor any contract was made nor that the letters passing between the parties afterward referring to them constituted the contract. The evidence was incompetent in any view of the case. Taylor could bind no one, and his promise, if made, would afford no excuse for not serving the notice. While it is admitted that no binding agreement was made with Taylor, it is insisted that such an agreement was made with Marshall J. Allen, president, and W. E. Bradley, vice president, of appellant. Edward S. Easton, president of appellee, testified that he met Marshall J. Allen at the National Hotel in Peoria about the middle of December, 1884, when Bradley introduced the parties, and again in Chicago about Christmas, 1884, and that at these times witness told Allen that appellee could not afford to pay the royalty if others did not, and that Allen wanted witness to recommend the process to others and gave assurances that appellee would not be required to pay as agreed unless appellant made the others pay. It will be observed that these conversations were more than a month before the preparation of the notice of February 4, 1885, which recited that appellee had elected to terminate the contract ten days from that date. Easton also testified about the notice, and said that it was made out by Jno. S. Stevens and brought by S. R. Clarke, secretary of appellee, to its office. It will be seen, therefore, that the consideration for the new agreement alleged in the pleas, which was refraining from serving the notice, failed to connect with the agreement. Again, the notice recognized the contract as being

in force according to its terms as made. The fact of its preparation with intent to serve it on appellant, taken in connection with the letters hereafter referred to, shows that it was not understood that there had been any contract made before that time surrendering the right to payment. The only complaint of appellee was that it could not afford to pay as it had agreed, and if the parties understood that they had agreed on that subject as appellee desired, there could be no object in serving the notice to the same end. Neither was it so understood at a subsequent date when letters were written by appellee seeking to have appellant agree as desired. After all the verbal negotiations of every character of which evidence was given, appellee opened a correspondence with appellant over the signature of E. S. Easton, its president, who claims to have made the verbal arrangement with officers of appellant. Under date of April 7, 1885, appellee wrote to Taylor stating its understanding of the talk with him, and seeking a statement of it in writing. That letter was as follows:

"PEORIA, ILLS., April 7th, 1885.

E. H. TAYLOR, ESQ., Frankfort, Ky.

*Dear Sir:* Our Mr. Clarke called upon you some weeks ago, when you were in Chicago, and had a talk with you in reference to using your slop process in our distillery, saying to you that we could not afford to continue using same and pay a royalty, while others were using it and not paying royalty.

You replied to him to go ahead and use same, and that unless the validity of the patent was established, that you did not consider that we owed your company anything for what use we had made of your process, and would make of same while the validity of your patent was being tested, and in case the validity of your patent was established, you were willing to treat with us on a fair, equitable basis, and if the validity of your patent was not established that we owed you nothing.

If we have stated correctly the understanding that our Mr. Clarke had with you, we trust that we will not be asking

anything unreasonable for you to give us a written state-ment to that effect.

Yours truly,<br>
MANHATTAN DISTILLING CO.,<br>
Per E. S. Easton, Pres't.

Dictated."

This letter was forwarded to appellant and answered by its secretary as follows:

" Our Mr. W. E. Bradley has forwarded to us your letter of the 7th inst., addressed to Mr. E. H. Taylor, Jr., of Frankfort, Ky. In reply to same, we beg to state that be-lieving you are disposed to do what is just and honorable in this matter, we take pleasure in assuring you that in no event shall we expect you to pay us anything more than royalty for the use of our process in accordance with the terms of the license signed by you, and which we now hold. In the event of all our patents being declared invalid, we shall expect you to pay us nothing.

Trusting that you will treat this matter as strictly confi-dential, we remain, gentlemen,

Very truly yours,

(Signed)          FRANKFORT WHISKY PROCESS CO.,
Per E. Bradley, Jr., Sec. and Treas."

On May 4, 1885, during the correspondence appellee wrote again concerning its understanding of the matter as fol-lows:

"PEORIA, ILLS., May 4th, 1885.

W. E. BRADLEY, ESQ., Frankfort, Ky.

*Dear Sir:* We are in receipt of your letter of April 30th, replying to our favor of April 25th.

We think that your N. Y. office did not fully understand our Mr. Clarke's talk with Mr. Taylor, as they reply putting stress on the following sentence: " *In the event of all our patents* being declared invalid we shall expect you to pay us nothing."

Now, our understanding of the whole matter is that if the validity of the patent was established, then you would not

charge us any more than the price you had given to the Vacuum Mashing Machine Co. ($1\frac{1}{4}$c. per bushel), and then would not expect us to pay unless you had made The Great Western Dist'g Co., Woolner Bros. Dist'g Co., and other distillers pay that were using it here, as it would not be right to make us pay while others did not. And that we should not pay anything for using the process before the 1st of January, 1885, and that you would not require any pay from us for what we had used of the process before Jan'y 1st, 1885.

In case the validity of your patents covering your process were not established, that we would owe you nothing for the use of the process under the contract you held against us. Now, we want to use you or treat you fair in the matter, and expect the same treatment from you, and if we can get this acknowledged right, so there will be no trouble, we shall keep on using the process. If not, shall have to give you notice that we will discontinue it.

We think from your letter of April 13th, that both you and Mr. Taylor agree with us in our statement, but we would like it properly acknowledged by the company.

Trusting you will fully appreciate our desires in this matter, and will forward our communication to the New York office, with notation for their official acknowledgment of the same, we remain,

Very truly yours,<br>MANHATTAN DISTILLING CO.,<br>Per E. S. Easton, Pres't."

To this letter Mr. Bradley replied as follows:

"FRANKFORT, Ky., May 6, 1885.

MANHATTAN DISTILLING CO.

*Gentlemen:* Replying to your esteemed favor of 4th inst., I beg to call your attention to two errors which it contains with regard to the proposition to Mr. Clarke, on your behalf. One is with regard to the price for royalty. The only proposal to make it $1\frac{1}{4}$ cents per bushel was to the Vacuum Mashing Machine Co. as a whole, and then only in case a certain mashing capacity took it. Otherwise our price to every-

body making high wines would be 1½ cents per bushel, and all licenses given since have been at that figure. We could under no circumstances alter it, and Mr. Clarke is certainly mistaken in supposing that anything we said was intended to convey such an idea.

The other error referred to was in fixing the date at the 1st of January. No such date was named, but as you probably did not derive any special benefit from it sooner, both Mr. Taylor and myself would be willing to make this concession if you wish it, and I have no doubt that the company would also consent as a whole.

It seems to me that Mr. Clarke must somehow have confused the talk we had in reference to the Vacuum Mashing Machine Co. as a whole, and the suggestion we made to yourselves through him, as both these points were understood to be included in the proposal to them.

With reference to the expression " all of our patents," we have three, and the whole number must be defeated to destroy our position.

Outside of these matters you are correct as to the object of our understanding with Mr. Clarke. We do not wish nor expect that you should pay us money for using that which other members of the Mashing Machine Co. have the benefit of for nothing, and you need not fear that we shall ask you to do so. Of this you have had our repeated assurance. Consequently if our patents are defeated, you will be under no obligation to pay us anything whatever.

I shall send a copy of this letter to New York, enclosing with it yours of 4th inst. The secretary of the company is at present absent in Bermuda, and will not return for ten or twelve days, so that the answer may be delayed until that time.

We should like to have you continue using the process if you are deriving any benefit from it, but if you can not find it for your interest to do so, of course you will act at your pleasure.

In any case however, you will find that the confidence you have heretofore placed in us has not been a mistaken

one.   I would very much like to have Mr. Easton or Mr. Clarke call on our people in New York, whenever either of them goes there, as there is no doubt that a conversation would in a short time so elucidate the matter as to make it satisfactory in every aspect.

Very truly,

W. E. Bradley."

The correspondence practically ended on the part of appellee with the letter of May 4th, which recognized the contract as in force, and threatened to terminate it by giving notice of a discontinuance of the use of the process.

There was never any further acknowledgment by appellant of any agreement nor any further concession made. These letters show that appellee did not understand when they were written that it had any agreement with Allen in the previous December. They refer to and rely upon the talk with Taylor, which was long after. They demonstrate that the parties did not agree upon any understanding such as is now claimed, but that they differed somewhat as to what was understood, and that the company at New York was referred to for any definite agreement. Appellee had acknowledged in the contract the validity of the patents, and the letters indicate that their validity and the right to collect from parties using the process was the matter under consideration and concerning which it was understood that appellant was making a concession variant from the contract. We think that the arrangement pleaded as a defense was not proven. But the alleged parol agreement, if proven, would be insufficient to change the terms of the contract, which was executory and under seal. Such an agreement can not be modified by a parol executory agreement. Loach v. Farnum, 90 Ill. 368; Hume v. Taylor, 63 Ill. 43. It is said on the part of appellee that it is not claiming a modification of the original contract by parol, but the substitution of a new agreement for a valuable consideration, and that such consideration consisted in not giving notice to cancel the contract and in using efforts to procure like contracts with other members of the Vacuum Mashing Co. That

position is untenable. The only variation claimed from the terms of the contract was that in a certain contingency the payment therein provided for was not to be made, while otherwise the obligations of the parties were to remain precisely as stipulated in the contract. To agree that the payment stipulated in the contract was not to be made in a certain event was not to substitute a new contract, but to change and modify the existing one, leaving all other provisions in force. The agreement as claimed was that if appellee would not terminate the contract, but leave it in force, one of its stipulations in a certain event should not be enforced. Such a change in an executory agreement under seal can not be effected by parol. The judgment will be reversed and the cause remanded.

*Reversed and remanded.*